UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ETTA L. WRIGHT,

                           Plaintiff,      **No. 1:15-cv-00415(MAT)**
                                            **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                           Defendant.

---

**I. Introduction**

Represented by counsel, Etta L. Wright ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**II. Procedural Status**

Plaintiff protectively filed applications for DIB and SSI on December 6, 2011, alleging a disability onset date of June 30, 2011. Her claim was initially denied on April 26, 2012. Plaintiff

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

timely requested a hearing, which was conducted on July 18, 2013, by administrative law judge Robert T. Harvey ("the ALJ") in Buffalo, New York. Plaintiff appeared with her attorney and testified. Impartial vocational expert Don Schader ("the VE") also testified. On August 28, 2013, the ALJ issued an unfavorable decision. (T.24-40).[2] Plaintiff's request for review by the Appeals Council was denied on April 15, 2015, making the ALJ's decision the final determination of the Commissioner. Plaintiff then commenced this action.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions. For the reasons set forth herein, the Commissioner's decision is reversed, and Plaintiff's claim is remanded for further administrative proceedings.

**III. The ALJ's Decision**

Initially, the ALJ found that Plaintiff meets the Act's insured status requirements through September 30, 2014. At step one of the sequential evaluation, he found that Plaintiff had not engaged in substantial gainful activity since June 30, 2011, the alleged onset date.

---

[2] Citations to "T." in parentheses refer to pages from the certified administrative transcript.

At step two, the ALJ determined that she has the following severe impairments: anxiety disorder, panic disorder with agoraphobia, and depressive disorder. He also determined that her obesity, asthma, hypertension, and history of alcohol abuse were not severe impairments.

At step three, the ALJ assessed Plaintiff's impairments in light of Listings 12.04 (Affective disorders) and 12.06 (Anxiety-related disorders) and found that, considered singly and in combination, they do not meet or equal either Listing.

Prior to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform all exertional activities consistent with the broad world of work, with the following nonexertional limitations: she has (1) occasional limitation in her ability to understand/remember and carry out detailed instructions; (2) occasional limitation in her ability to interact appropriately with the general public; (3) occasional limitation in her ability to "deal limits [sic] in the ability to make decisions"; and (4) she can work in a low interpersonal-contact work environment.

At step four, the ALJ found that Plaintiff had past relevant work at a grocery store as a Food Demonstrator (Dictionary of Occupational Titles ("DOT") No. 297.354-010, light, specific vocational preparation ("SVP") 3) and a Sandwich Maker (DOT No.

317.664-010, medium, SVP 2). Given her RFC, the ALJ found, Plaintiff is unable to perform any of her past relevant work.

At step five, the ALJ relied on the VE's testimony (T.67-68), that a person of Plaintiff's age, vocational background, education, and RFC would be capable of performing the following representative occupations: (1) Laundry Worker (DOT No. 361.685-018, medium, unskilled, SVP 2, with 570 jobs in the Buffalo/Niagara Falls region and 198,750 jobs nationally); and (2) Marking Clerk (DOT No. 211.467-030, light, unskilled, SVP 2, with 1,782,800 jobs nationally). Accordingly, the ALJ entered a finding of not disabled.

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]" Id. "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

**V.  Discussion**

**A.  Failure to Develop Record and Properly Weigh the Treating Therapist's Opinion**

Plaintiff challenges the RFC assessment on the basis that the ALJ's duty to develop the record required him to obtain a mental RFC opinion from an acceptable medical source in a treating relationship with Plaintiff. (See Plaintiff's Memorandum of Law ("Pl's Mem.") (Dkt #8-1), Point ("Pt.") IV at 17-20). The Commissioner argues that the lack of a treating source opinion did not render the record incomplete and did not trigger the ALJ's duty to develop the record.

In the present case, the only opinion issued by one of Plaintiff's treatment providers regarding her mental RFC was authored Licensed Master Social Worker Jo Ramsey ("LMSW Ramsey"), with whom Plaintiff attended psychotherapy counseling sessions about twice a month. On July 19, 2013, LMSW Ramsey completed a mental RFC assessment form (T.337-42) indicating that Plaintiff was prescribed Celexa, Xanax, and Risperdal, which caused sleep impairments. LMSW Ramsey summarized Plaintiff's signs and symptoms as follows: manic syndrome, sleep disturbance, pressure of speech, generalized anxiety, apprehensive expectation, paranoid thinking, emotional withdrawal, and recurrent severe panic attacks. (T.338).

-5-

LMSW Ramsey indicated that Plaintiff's prognosis was good. (T.337). With regard to the mental abilities and aptitudes needed to do unskilled work listed on the RFC form, LMSW Ramsey opined that Plaintiff had "no useful ability to function" in those areas; underneath the check-the-box table, LMSW Ramsey wrote, "not currently employed." (T.339). LMSW Ramsey opined that Plaintiff had "unlimited" or "very good" ability to understand and remember detailed instructions, set realistic goals, make plans independently of others, interact with the general public, maintain socially appropriate behavior, and adhere to basic standards of cleanliness. (T.340). LMSW Ramsey stated that Plaintiff was "seriously" limited in her ability to travel in unfamiliar places or use public transportation. (Id.). According to LMSW Ramsey, Plaintiff would be absent from work about 3 days per month due to the symptoms caused by her mental impairments or the need to attend treatment for those impairments. (T.341). LMSW Ramsey noted that Plaintiff was employed for several years as a customer service technician but was terminated due to tardiness. (Id.). LMSW Ramsey indicated that Plaintiff reported having "panic attacks while working on customers." (Id.).

Social Security Ruling ("SSR") 06-03P, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939 (S.S.A. Aug. 9, 2006), observes that "other medical sources," such

as licensed clinical social workers and therapists, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists[,]" and it directs that "[o]pinions from these medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. at *2, *3. Thus, while "'[o]ther' source opinions, even when based on treatment and special knowledge of an individual, never enjoy a controlling weight presumption[,]" Griffin v. Colvin, No. 7:12-CV-976 GLS/ESH, 2014 WL 296854, at *6 & n. 17 (N.D.N.Y. Jan. 27, 2014) (citing SSR 06-03p, 2006 WL 2329939, at *2; other citation omitted), the Commissioner has emphasized that they are becoming increasingly important and must be evaluated. "Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-03P, 2006 WL 2329939, at *4. "Not every factor for weighing opinion evidence will apply in every case[,]" and the evaluation of an opinion from a provider who is not an "other source" "depends on the particular facts in each case." Id. at *5.

The ALJ assigned "very little weight" to LMSW Ramsey's opinion because it was "contradictive [sic]." (T.35). The ALJ then listed four reasons for his finding:

First, the opinion was not from an acceptable medical source and could not be accorded controlling weight. (Id.). However, this is not a reason for finding it to be "contradictive [sic]." Second, the ALJ stated, LMSW Ramsey "writes that the claimant can not [sic] engage in any simple tasks, but she is able to complete complex tasks." (T.35). However, this does not accurately reflect the record. There is no box that says "complete complex tasks" on the form. The ALJ might be referring to "[c]arry out detailed instructions" (T.340), but LMSW Ramsey did not check any of the rating boxes for this activity. (See id.). Thus, she did not give an opinion on Plaintiff's limitations in carrying out detailed instructions. Third, the ALJ wrote that despite opining that Plaintiff had a "good" prognosis, LMSW Ramsey stated that Plaintiff could not function in a work setting. (T.35). That a claimant may have a good prognosis—which is necessarily somewhat speculative and occurring in the future—does answer the question of how that claimant is *currently* able to function in a competitive work environment on a full-time basis. Therefore, those two statements are not necessarily contradictory. Fourth, the ALJ stated, LMSW Ramsey's "treatment notes do not support these check box conclusion." (T.35). However, the ALJ did not identify which treatment notes were inconsistent with LMSW Ramsey's opinion, which frustrates the Court's ability to determine whether that finding is based on substantial evidence. See, e.g., Cordero v. Colvin, No.

1:15-CV-00845(MAT), 2016 WL 6829646, at *3 (W.D.N.Y. Nov. 21, 2016) ("[T]he ALJ stated that Dr. Lawrence's opinion was 'without substantial support from the other evidence of record, which obviously renders it less persuasive.' The ALJ did not identify, much less allude to, which evidence of record failed to offer 'substantial support' for Dr. Lawrence's opinion. This was error, and it precludes the Court from conducting a meaningful review of whether the ALJ's decision is supported by substantial evidence.") (citations and internal quotations to record omitted). Remand is necessary for the ALJ to re-contact LMSW Ramsey for clarification of her opinion and a re-weighing of her opinion in accordance with the applicable policy rulings and Regulations.

**B. Erroneous Credibility Assessment**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to properly assess her credibility. (See Pl's Mem., Pt. III at 15-17) (citing SSR 96-7P; 20 C.F.R. §§ 404.1529, 416.929). The Commissioner contends that the ALJ considered the proper factors listed in SSR 96-7P and did not rely solely on Plaintiff's daily activities to discount the credibility of her subjective complaints. Because the Court has found a separate error in connection with the RFC assessment, the Court need not address Plaintiff's argument regarding the ALJ's credibility analysis.

**C. Step-Five Error Due to Conflict Between VE Testimony and Agency Policy**

Plaintiff argues that the ALJ's step-five finding is unsupported by substantial evidence because of a conflict between the VE's testimony and Social Security Administration ("SSA") policy articulating the requirements of unskilled work. (See Pl's Mem., Pt. I, at 11-13). As Plaintiff notes, "SSA adjudicators may not rely on evidence provided by a VE . . . or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with [the Commissioner's] regulatory policies or definitions." SSR 00-4P, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000). As an example, SSR 00-4P explains that "[a]lthough there may be a reason for [a VE] [to] classify[ ] the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling." Id.

Plaintiff also cites Program Operations Manual ("POMS"): DI 25020.010(A)(3)(a),[3] which identifies the four basic mental demands of competitive, remunerative, unskilled work as the abilities, on a "sustained basis," to understand, carry out, and remember simple instructions; make judgments that are commensurate with the

---

[3] Available at https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last accessed Dec. 13, 2017).

functions of unskilled work, i.e., simple, work-related decisions; respond appropriately to supervision, coworkers, and work situations; and deal with changes in a routine work setting. Plaintiff notes that SSR 96-9P defines "sustained basis" as "8 hours a day, 5 days a week, or an equivalent work schedule." See Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, 1996 WL 374185, at *2 (S.S.A. July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule.").

Plaintiff notes that the ALJ, in his hypotheticals to the VE, included a limitation on making decisions to "occasionally," (T.66), which he defined as "occurring very little to one-third of the time," (T.64), in accordance with the DOT. According to Plaintiff, this limitation, read in concert with the foregoing provisions in POMS DI 25020.010(A)(3)(a), SSR 00-4P, and SSR 96-9P, "effectively precludes all unskilled work," because if she "can only make decisions up to one-third of an 8-hour day, this is certainly a substantial loss of one of the four basic demands of unskilled or that must be performed on a sustained basis." (Pl's Mem., Pt. I, at 12 (bolded text omitted)).

As an initial matter, the Second Circuit has "recognize[d] that the POMS guidelines 'ha[ve] no legal force, and [they] do[ ]

-11-

not bind the [Commissioner].'" Tejada v. Apfel, 167 F.3d 770, 775 (2d Cir. 1999) (quoting Schweiker v. Hansen, 450 U.S. 785, 789 (1981); all brackets except first in original). Moreover, although Plaintiff attempts to quantify what constitutes a "substantial loss," SSA regulations and rulings do not define that term. Even assuming that the POMS guidelines have the force of law, POMS DI 25020.010 expressly notes that "[s]ubstantial loss cannot be precisely defined[,]" and "[i]t does not necessarily relate to any particular adjective, number, or percentage."[4] Thus, the adjective "occasional" does not lead to an automatic finding of disability. The Court need not conclusively resolve this argument since, on remand, the ALJ necessarily will have to conduct a new step-five analysis. At that time, he will need to consult a vocational expert, and Plaintiff can ensure that the ALJ obtains clarification on this point from the vocational expert.

**D. Step Five Error Due to Facially Erroneous VE Testimony**

Plaintiff also contends that the step-five finding is deficient because the Commissioner relied on other testimony by the VE that is facially erroneous. (See id., Pt. II, at 13-15). Plaintiff's first argument centers on the fact that the VE provided an incorrect citation to the DOT code for the job of Marking Clerk. (See T.67 (VE referred to "[t]he job of a marking clerk, DOT code

---

[4] Available at https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last accessed Dec. 13, 2017).

211.467-030, the strength is light, the SVP is 2; numbers in the national economy [are] 1,782,800")). However, Plaintiff notes, DOT code number 211.467-030 refers to the job of Ticket Seller.[5] The ALJ repeated this error in his decision. (T.37). As the Commissioner points out, the correct DOT code for Marking Clerk is 209.587-034, and it has a light strength requirement and an SVP of 2.[6] As far as the strength requirement and the SVP, the job of Marking Clerk as defined in the DOT is consistent with unskilled work, and the physical aspect of the RFC assessment. However, due to the error in citing the proper DOT code, the VE's testimony does not establish that the Marking Clerk job exists in significant numbers in the national economy. Moreover, the fact remains that the VE's testimony was incorrect, and the ALJ relied on this testimony in his decision. The Commissioner urges that this is simply as a ministerial error, the Court declines to treat it as such, given that additional fact-finding is required, and that there is limited burden shift to the Commissioner at step five.

The Commissioner alternatively argues that any error was harmless since the VE correctly provided a second job option that Plaintiff could perform, that of Laundry Worker, with 198,750 jobs

---

[5] Dictionary of Occupational Titles, available at https://occupationalinfo.org/21/211467030.html (last accessed Dec. 14, 2017).

[6] Dictionary of Occupational Titles, available at https://occupationalinfo.org/20/209587034.html (last accessed Dec. 14, 2017).

available nationally. As the Commissioner notes, the Regulations provide that even one occupation with a significant number of jobs in the national economy that claimant can perform demonstrates that the claimant is not disabled. See 20 C.F.R. §§ 404.1566, 416.966. Plaintiff, however, argues that her asthma rules out the job of Laundry Worker. The Commissioner counters that the ALJ did not include her asthma as a severe impairment at step two, and Plaintiff never testified to any significant limitations from her asthma; therefore, she can perform this job. The Court declines to engage in the fact-finding necessary to resolve the Commissioner's harmless error argument. As discussed above, remand is the appropriate course in this case.

**VI. Conclusion**

For the reasons discussed above, the Court finds that the Commissioner's decision contains legal errors and is not supported by substantial evidence. Plaintiff's motion for judgment on the pleadings is therefore granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this opinion. Defendant's motion for judgment on the pleadings is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: December 27, 2017
Rochester, New York.